2011-16-17 HOLLISTER INC v. CONVATEC The question on appeal is whether a general release bars as a matter of law an infringement claim that's based on a patent that hadn't been issued at the time that the release was executed. Under New Jersey law, which governs the contract here and this court's precedents, releases generally are construed not to release future claims unless the future claim is explicitly mentioned in the release. Because the release at issue here does not mention future claims under unissued patents, the district court should not have granted summary judgment. But it says from any and all past, present, or future claims, including without limitation claims for patent infringement or misappropriation or misuse of confidential information, it doesn't say only existing claims, only to existing patents. I don't see how that language could possibly be any broader. But, you know, if you look at the cases that we cited, New Jersey cases and the baseload in how Medica cases here, you've got very, very broad releases. And general releases usually are, as you know, the lawyers, they fill them up with redundancy and it makes it look like they cover every claim from the beginning of time to the end of creation. You know, most releases seem to list a patent number, in my experience, the patent numbers at issue. This release doesn't. It says all patent infringement claims, past, present, or future. Right. If you look at the releases in the how Medica and baseload energy cases, they're very similar. And they say any and all. But what the courts do, because there's sort of a disfavoring of release of future claims unless it's very clear that that's what the party's intended, the courts require you to be much more specific. It's not enough to say any claim from A to Z. Isn't your real problem here is that the documents specifically reference selling a product? And says that we want them to be able to, the parties jointly, want them to be able to continue selling this product as it currently exists or has ever existed in the past. And that we release them from all claims and future claims relating to this product. So it's not, the cases that you cite do not talk about releasing all claims relating to the sale of a product. They talk about releasing claims relating to a particular patent or maybe releasing claims relating to a particular lawsuit. This has to do with the actual sale of a product. Right. Sure. There's a product specific release here. But it remains a general release. And the principles that apply to general releases apply here when it comes to future claims. That they have to be very specific and it does not specify that you could continue to sell that product no matter what patents are issued in the future. So there's enough un-clarity here for this not to be dispositive based on the principles. Well, certainly, if somebody else who didn't execute this release got a patent, they would have to deal with that. But this is someone who's executed a release and said, forever in the future, you can sell this product. Well, they didn't. Getting a later issued patent, I don't understand how you get out from under that. Well, again, if you look at the cases, they do require you to be more specific and just say any and all claims that may arise in the future, they did not, you know, they could have, the parties could have said including unissued patents. And in fact, if you look at the license that was issued simultaneously and incorporated, the parties did license under this other type of technology, what we call COP or ostomy technology, they did license Convitec to proceed under patents that hadn't been issued yet. But had there been applications for them, though? There had been applications for them. So there was something to license? There were pending, well, there was a pending application even here for what became the parent of the 583, which had been published a couple of years before the settlement agreement. But paragraph 28 goes further. Again, it says, the parties understand and accept the risk that they may have substantial claims, quote, that have not yet been manifested or are presently unknown or have not yet been identified. The parties nevertheless intend to and deliberately release from all of these possible future claims. So not manifested means don't yet exist. Well, but not yet manifested or identified suggests that they existed at least in potential at that time. Well, not yet manifested doesn't, not yet identified does, but you list a whole bunch of alternatives, all of which are meant to be encapsulated in this release, one of which is not yet manifested. Manifested means it doesn't exist yet. But I think if you look at, if you look at, look, this court has addressed this issue four times up to this point. The first time it found that the claim was released, that was in Augustine. And the difference in Augustine is that there the patents had been issued and the infringing activity was already taking place, so the court said, well, you had to have known about this claim. And that's how this court distinguished it in its next case, diversified. But all three of the last cases, the claim was held not to be released despite this very broad language. And what the courts did is they said, look, it's not absolutely clear based on this language whether you meant issued, unissued, or whatever. None of those three cases was the release actually addressed to the sale of a product. No, I understand that. But nevertheless, you have very broad language. And the court says, look, that's not enough. Let's look at what other evidence there is. I mean, Judge O'Malley's point is well taken, but also, for example, in Baseload, it specifically referenced the patent number and offered a non-exclusive license to that same patent. I mean, there's no reference to the patent number here in this release language. In Halmedica, they concluded that the release language, which is not identical to this, was ambiguous. And then they decided that based on the extrinsic evidence, the ambiguity was resolved in favor of not having it be released. But here, I don't see any ambiguity in the language. And the court concluded there wasn't. If you look at the language in the Halmedica release, it seems to cover everything. But what the courts say when it comes to future claims, you've got to be more specific than that. And if you're not, that's not dispositive. But it means we've got to look at all the evidence. And so you've got to look here at the, for example, the license. Why did they license Convitec to proceed under this other type of technology if the releases, which released both COP and the BMS technology claims, were so broad? Why did Zassy make these representations? Well, no. In Halmedica, it expressly says, I'm quoting from the release, to any claims that were or could have been asserted in the New Jersey lawsuits. The in the New Jersey lawsuits is not part of it. That's the court's substitution, as you understand. But were or could have been asserted. Well, an unissued patent is not a claim that was or could have been asserted. You know, the language here doesn't say we're only releasing you from claims that were or could have been asserted. Language here says claims that weren't even manifested yet were released from. It's a big distinction between Halmedica and this. But what you see in those cases is the court's just not taking at face value this very broad language and instead looking at all the evidence, which the district court didn't do here. It said that the language itself was dispositive. Where under New Jersey law, in addition to the license that it essentially brushed aside because it said the language was too clear, under New Jersey law, you have an expansive view of extrinsic evidence where the Supreme Court there has rejected what was Professor Williston's view of a restricted view of extrinsic evidence which says you don't look at it unless it's clear that the language is ambiguous. Let's look at the extrinsic evidence. I observed your argument that Zassi never mentioned that it had entered into this agreement. Did Zassi provide any evidence or testimony or statement or did this all happen before you got into the deposition phase as to what their view was of the intention of this cross-license? Yeah, the summary judgment motion was filed before there was any discovery at all here. We do believe that what were Zassi's intentions in the assignment to Hollister? He said that there have been no licenses or other restrictions with regard to any of the pending applications. But he didn't say anything about covenants not to sue. The fact that they might not have mentioned a covenant not to sue is essentially different from whether there's a license or a restriction. Right, but I think what it does is it raises questions about what it is that Zassi meant that ought to be explored before the court just throws the case out of court based on this language, a broad general release language that given the license to proceed with under unissued patents involving this other type of technology why would you issue a license for that but not for the BMS technology when you were given equally broad releases? I think this raises questions on top of the Zassi evidence that we think should be explored and that's really, I think, the thrust of this court's decisions in how Medica and BASE look. Sure, you can look at the releases there and say they're different or they're not different but the real thrust of those cases is that no matter how broad the general release language is you have to look at all the evidence including a simultaneously executed license which was actually incorporated into the settlement agreement it's part of the agreement and so you can't just look at the release language separate and apart from that license. All of this needs to be taken into account in order to eventually determine what the intent of the parties was. You have a summary judgment motion in which the movement says this was the intent of the relationship with Zassi and so we have the absolute right to do this and that. Is there an opportunity to contravene that in the way you are telling us it should be contravened? Well, that was the reason that in the district court that we made this extrinsic evidence argument that there's a lot of evidence here that raises questions we're not saying it's dispositive that in and of itself what we've got thus far means that we win ourselves but it does raise enough questions that the court shouldn't have cut off the case on summary judgment but should proceed to determine what was it that was intended by issuing this license? Did you file a 56-F motion and ask the court not to rule pending discovery? No, there's no record that that happened, Your Honor but this court has often reversed summary judgment without addressing whether in fact and sent it back for more discovery without addressing whether there was the 56-F motion or not and we think that would be the appropriate thing to do here. Well, if it hadn't been requested that makes it quite difficult for us to say you were entitled. Well, you know, by making this argument based on the Zassi representations and the license you're right, there wasn't an express request on the 56-F but implicitly what we were saying was that all this evidence needs to be taken into account and it needs to be explored which can only be done through discovery Zassi's a third party and before the court determines that this language is absolutely dispositive we should look at all the evidence. That's basically our case argument. Thank you, Mr. Charles. Mr. Malin. Good morning, Your Honor. May it please the court. As an initial matter I would like to just address this discovery issue. Discovery was an option and in the record we had a hearing shortly the day after the summary judgment motion was filed and that's at a 1, 2, 8, 4 through 8, 5, line 24 Mr. Izzucci who was counsel for Hollister represented to the court that we don't think we're going to need discovery based on that premise we would like until March 16th. That's the date to respond. So there was an affirmative decision. Not only was there not a 56-F motion filed but there was a representation in the court that no discovery was needed at all. Do you agree with the representation that your friend on the other side made that says that New Jersey law is different as it relates to plural evidence and its consideration of plural evidence than most other jurisdictions who say you look to see if the language of the contract is ambiguous first? It's a little bit different in that you can always look at extrinsic evidence but you can only look at it to affirm or add further light to the interpretation that's in the contract itself. Wouldn't it be more clear to state that you can't use it to contradict the plain language? That's absolutely correct, Your Honor. I was just going to get to the quote from the cases from Conway, for example, and even this court's case Abbott Point of Care which is 666-1299 and in that case the admission of evidence of extrinsic facts is not for the purpose of changing the writing but to secure light by which to measure its actual significance. So far as evidence tends to show not the meaning of the writing but an intention wholly unexpressed in the writing, it is irrelevant. And in this case here what makes the agreement in this case so much different is the parties are talking about intent and I hear Hollister talking about intent but yet it ignores the plain statement of intent in the agreement itself in the whereas clause. On page A514 the parties at the time when they signed this, they set forth their expressed intent as to what paragraph 10 means. And I'll quote you at A514 the 1, 2, 3, 4, 5th whereas clause it says, whereas it is the intention of the parties here too that Convitec will be permitted to continue manufacturing, offering for sale, and permitting worldwide the present or past commercially available Flexaseal FMS product, a sample of which Convitec has designated as Exhibit A and was in fact attached to the agreement by letter and the sample. Both parties have a copy of the sample. Are the identical products at issue here? The designs are the same. That's not at issue at all. When I say identical, there were minor changes or differences and those were all spelled out in a declaration that was set forth on summary judgment and it is in the record and I can find that for you there, but there's no dispute as to whether this agreement applies to the design as it exists today. What do you make of the Zassi representations? Do you really think that the Zassi representations to Hollister as a point of sale actually reflect a different intent than is reflected in the whereas clause that you just recited to us? No, I think Zassi, look, I think Zassi was trying to sell a business for tens of millions of dollars at that time and they may have forgotten, they may not have. I mean, the point is in that asset purchase agreement, while Zassi made that representation about there being no none of the acquired intellectual property being encumbered. In fact, nine of the patents or patent applications that were part of the acquired intellectual property were in fact part of the cross-license agreement, so either Zassi made a mistake or had some other motive with respect to its sale with Hollister, but that's between Hollister and Zassi. That representation occurred nearly a year after the settlement agreement was entered into. That's also, I would point out also that subsequent act or subsequent statement by Zassi is entitled to very little weight, if any at all, for a couple of reasons. One is that it was a unilateral statement. It was never communicated to Convitec. It was never made to Convitec. It was never provided to Convitec. The cases that are relied on by Hollister, the Julius Goldman Ex City, that one makes clear that subsequent activity, it's got to be between the parties to the contract, not someone going off and saying whatever they want and all of a sudden that becomes very relevant, extrinsic evidence. So no, I don't think that that agreement is relevant at all here. You agree with the representation that it appears that Hollister was not even aware of this release until this litigation began? That's what Hollister represented to us, but I will point out that Hollister also relies on a so-called email, that's I think A684, and apparently we're not aware of the cross-license agreement either, although if we're to believe this email, they talked about the entire cop portfolio and a license to Convitec there. That's at A686. And that was, I guess, this document came from Hollister's files. We don't know what this email is. It doesn't look like an email. It looks like a memo that someone prepared, but it references about GC near the bottom, under the following third-party licenses to ZASI have been granted and identify as a license to Convitec. And purportedly that's the cross-license agreement. And so ZASI apparently, Hollister wasn't aware of that cross-license agreement either until we provided it to them. Okay. Any more questions? Can I just make one other point about the implied license, if that's possible? That this court can affirm on the implied license as an applied license as well here if it so chooses, because there was a right granted so that was the right to continue manufacturing the product, and that right is now being derogated from us and ZASI was paid considerable money and received valuable consideration, so you can affirm on that basis as well. Thank you. Okay. Thank you, Mr. Mellon. Just a few quick points. On the extrinsic evidence under New Jersey law, what the Supreme Court said in Conway there is that they rejected the restrictive view and adopted the expansive view that said courts should consider all relevant evidence that will assist in determining the intent or meaning of a contract, even when the contract on its face is free from ambiguity. So it's true that you can't use it to change the meaning of the contract, but you can look at all of it, and you should look at all of it, in order to determine what, in fact, the contract means. Now on these ZASI representations, my colleague suggested, well, maybe he forgot, or it's also, I think, implicit, maybe he lied, he was trying to sell a business. Well, how can you determine that without some investigation? One of these representations were made at the time of the assignment of intellectual property rights, and others were made during due diligence. So these, in our view, need to be investigated. What is that email? Why doesn't it have a header on it? None of these questions are answered. My colleague also pointed to one of the recitals in... What about the fact that ZASI also didn't mention the licenses that you concede were given? I'm sorry, I didn't hear the last part. What about the fact that he argued that ZASI didn't mention the licenses that you do concede were given? Right, well, he does mention a number of licenses, but he referred only to the COP technology, which in fact is the only thing that was licensed in the settlement agreement. He never suggested that there was any restrictions at all on the BMS technology, patents or anything else that he was conveying. And with respect to the recital that my colleague mentioned, a recital gets even less weight than a general release because the law, which like I said, and New Jersey law is very specific on this, it disfavors the release of future claims, which is why it requires you to be very specific to show that you really did intend that, and it would have been very easy for these sophisticated parties... This is confusing because Mr. Malin says that the products that were the basis of the infringement action were the same products that are specifically mentioned in the ZASI license. So you're telling us that the difference between the BMS and the other products are dispositive of what was licensed and what wasn't. But if the products are the same, that doesn't quite harmonize. Yeah, there's no question that there's a general release with regard to this BMS product that Convitec was using at the time. But what's not absolutely clear and really needs to be investigated in terms of some of this other evidence is whether the parties intended that Convitec would be able to use this product forever no matter what patents were issued in the future as opposed to what the existing patent situation was at the time. Any more questions? Any more questions? Okay, thank you Mr. Sarles and Mr. Malin. The case is taken under submission. That concludes the panel this morning.